IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GOODMAN BALL, INC., | No. C 10-01249 WHA |
| Plaintiff, | |
| v. | **ORDER ON MOTION TO DISMISS, MOTION FOR A MORE DEFINITE STATEMENT, MOTION TO TRANSFER, AND MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| MACH II AVIATION, INC., ESCAPE VELOCITY OF TAMPA BAY, INC., JOHN STANTON, WALTER HOLMICH, PETER ARGER, and DOES 1–10, inclusive, | |
| Defendants. | |

**INTRODUCTION**

In this patent infringement and breach of contract dispute involving water purification systems imported from Australia and sold to the United States Navy, certain defendants move to dismiss the complaint for lack of personal jurisdiction, improper venue, and for violating the pleading requirements of FRCP 8(a)(2). In the alternative, these defendants move for a more definite statement with respect to particular allegations in the complaint and to transfer this action to the United States District Court for the Middle District of Florida. This order also addresses plaintiff's motion for partial summary judgment, which argues that *res judicata* — specifically claim preclusion — bars any challenges by defendants to the validity of the patent-in-suit.

For the reasons set forth below, defendants' motions are **GRANTED IN PART** and **DENIED IN PART**. While this action will not be dismissed in its entirety or transferred to another forum,

individual defendant Peter Arger will be dismissed from these proceedings on improper venue grounds. Plaintiff's motion for partial summary judgment, however, has more drastic implications. As explained herein, this order finds that claim preclusion *does* bar any challenges by defendants to the validity of the patent-in-suit given the circumstances of the instant litigation. Accordingly, plaintiff's motion is **GRANTED**. This victory, however, comes at a price. For the same reasons that defendants are barred herein from challenging the validity of the patent-in-suit, *plaintiff is also barred from asserting its patent infringement claims*. Given this determination, all patent infringement claims against defendants John Stanton, Escape Velocity of Tampa Bay, Inc., and Mach II Aviation, Inc. will be dismissed from this action. In sum, only plaintiff's breach of contract claims against the corporate defendants remains to be adjudicated.

**STATEMENT**

Plaintiff Goodman Ball, Inc. is a California corporation based in Menlo Park that designs, tests, and manufactures water purification systems for military applications. At issue in this litigation is its water purification technology, which is allegedly covered by United States Patent No. 5,399,260 (Compl. ¶ 25). Defendants Mach II Aviation, Inc. and Escape Velocity of Tampa Bay, Inc. are Florida companies that — according to plaintiff — commissioned a non-party Australian entity named Acqua International (Australia) Pty. Ltd. to manufacture "copycat" water purification units for importation into the United States and sale to the United States Navy. Specifically, plaintiff alleges that Mach II and Escape Velocity sold 42 of these allegedly infringing water purification units — at a price of approximately $40,000 per unit — to the United States Navy in both Port Hueneme, California and Gulfport, Mississippi between 2003 and 2008.

This is not the first patent infringement action on these alleged facts. Believing that these "copycat" products infringed the '260 patent, plaintiff sued Mach II and Escape Velocity in February 2007 for patent infringement in the United States District Court for the Northern District of California. The action was assigned to and presided over by Magistrate Judge Bernard Zimmerman (CV 07-01148 BZ). During the course of jurisdictional discovery in the 2007 action, plaintiff learned that two individuals — John Stanton, the owner of Escape Velocity, and Walter

Holmich, the owner of Mach II — had commissioned the allegedly infringing sales to the Navy. The sales were consummated under a so-called "master contract" that Mach II had secured with a government agency called Defense Supply Center of Philadelphia ("DSCP") in 2003 (Holmich Dep. 23–25). Under the master contract, DSCP issued three separate purchase orders to Mach II for delivery of a total of 42 water purification units to the United States Navy (*id.* at 25, 35; Ahmadshahi Decl. Exh. B–D).

The owner of Mach II, Walter Holmich, confirmed in a deposition taken during the prior litigation that the alleged infringing units were manufactured in Melbourne by an entity called "Acqua" and imported into the United States to fulfill these three purchase orders (Ahmadshahi Decl. Exh. A, Holmich Dep. 32–34). Mr. Holmich also confirmed that 36 water purification units had actually been sold to the United States Navy at a price of approximately $40,000 each in satisfaction of two of DSCP's three purchase orders. Moreover, 18 of these units were shipped directly to Port Hueneme in California by Mach II (*id.* at 39–40, 43–44). Finally, Mr. Holmich noted that his "friend" John Stanton had paid the Australian company $200,000 to manufacture these units (*id.* at 41–42).[1] When asked for clarification as to whether it was Mr. Stanton or Escape Velocity who had issued the $200,000 payment, Mr. Holmich testified that Mr. Stanton and Escape Velocity were the "same thing" (*see ibid.*).

Discovery in the prior litigation also revealed that the third purchase order issued by DSCP under its "master contract" with Mach II was cancelled due to contractual disputes between Mach II and its Australian supplier. Plaintiff further discovered that Mr. Stanton possessed an additional 22 "copycat" water purification units that had yet to be sold (P's Opp. 5). These unsold (and allegedly infringing) units were located in Florida and were in the possession of another business entity owned by Mr. Stanton called SolarDiesel Corporation, which is not a party to this litigation (Ahmadshahi Decl. Exh. F, Stanton Decl. ¶ 8).

---

[1] In response to a question by plaintiff's counsel as to why Mr. Stanton had paid the Australian company for the water purification units, Mr. Holmich explained at his deposition, "John Stanton and I are friends. I wanted to sue [Acqua]. I wanted to hold their feet to the fire. And Mr. Stanton don't like confrontation like that. He's my friend. He wants to make things smooth, and he paid it" (Holmich Dep. 42).

3

The prior lawsuit settled in February 2008. The settlement agreement — handwritten by the litigants after a daylong mediation session in California — provided for damages and an injunction against Mach II and Escape Velocity, and expressly allowed the remaining 22 "copycat" water purification units to be sold so long as the sales were limited to "only non-U.S. military purchasers outside of the United States" (Compl. Att. 1; Ahmadshahi Decl. Exh. E at ¶ 4). Pursuant to this agreement, a conditional dismissed *with prejudice* was entered by Judge Zimmerman, allowing the parties a small window of 60 days to file a motion to reopen the matter if the settlement fell apart (*see* Dkt. No. 83, CV 07-01148 BZ).

According to the complaint filed in the instant action, however, the settlement agreement was breached by defendants shortly after it was consummated. Specifically, in May 2008, defendant Mach II allegedly delivered six of the 22 remaining water purification units to the United States Navy pursuant to the supposedly "cancelled" third purchase order with the DSCP. These shipments are expressly mentioned in a January 2010 opinion issued by the Armed Services Board of Contract Appeals pertaining to the master contract between DSCP and Mach II, wherein the order stated that "[i]n May of 2008, MACH II shipped six water purification units to the government, allegedly in satisfaction of DOOO19 [Purchase Order #3]" (Ahmadshahi Decl. Exh. G at 4). Based upon the terms of the third purchase order, three of these six units were shipped directly to Port Hueneme in California (*id.* at Exh. D).

Plaintiff also learned in October 2008 (over half a year after the prior litigation had been supposedly settled) that SolarDiesel — who was in possession of the remaining unsold water purification units — and Mr. Holmich had both filed for bankruptcy in June 2008 and that SolarDiesel had disposed of the allegedly infringing units through its bankruptcy estate (*id.* at Exh. H). According to plaintiff, defendants "could not account for the Units or their whereabouts" and, due to their bankruptcy, were unable to make their scheduled payments under the settlement agreement (*see* Dkt. No. 84, CV 07-01148 BZ).

Given these shenanigans, in December 2008, plaintiff moved to reopen the prior litigation pursuant to FRCP 60(b), alleging (among other things) that defendants' conduct in "settling" the

4

1    prior action had amounted to fraud.[2]  After temporarily reopening the matter and entertaining a

2    series of motions, Judge Zimmerman concluded that he lacked jurisdiction to enforce the

3    settlement agreement because the action had already been dismissed with prejudice and neither

4    party had moved to reopen the matter within 60 days of dismissal.  He therefore found that the

5    action should not have been reopened, and that a new action had to be filed.  The prior litigation

6    was therefore dismissed with prejudice in December 2009 (or, rather, the order reopening the

7    action was vacated), and judgment was entered accordingly.

                              *                              *                              *

9       Plaintiff filed the instant action in March 2010 (Dkt. No. 1).  In addition to naming Mach

10   II and Escape Velocity as defendants, the complaint also named three individual defendants who

11   were not parties to the prior litigation: (1) John Stanton, the alleged sole shareholder, officer, and

12   director of Escape Velocity, (2) Walter Holmich, the alleged owner of Mach II, and (3) Peter

13   Arger, the alleged "Special Project Manager" of Escape Velocity who purportedly acted as an

14   "officer" of Escape Velocity during the prior litigation.  While Judge Zimmerman deemed the

15   newly filed action "related" to the original 2007 litigation pursuant to Civil Local Rule 3-12,

16   defendants declined to proceed before a magistrate judge.

17       The complaint in the instant action alleged two claims:  (1) direct and induced

18   infringement of the '260 patent by both corporate and individual defendants based upon Mach II's

19   supposed sale of six water purification systems to the United States Navy in May 2008, and (2)

20   breach of contract by the corporate defendants based upon their alleged violation of the settlement

21   agreement reached during the 2007 litigation, including their supposed failure to make two

22   scheduled payments pursuant to the agreement.

23       In August 2010, plaintiff moved for and obtained an entry of default against defendants

24   Mach II and Walter Holmich for failing to respond to the service of summons and complaint (Dkt.

25   Nos. 16, 17).  Shortly thereafter, the non-defaulting defendants — Escape Velocity, John Stanton,

26   and Peter Arger — moved to dismiss the complaint on three separate grounds:  (1) pursuant to

---

[2] As alleged in the complaint, at the time plaintiff moved to reopen the prior litigation in 2008, it had knowledge of both the sale of the additional six units to the United States Navy and that SolarDiesel and Mr. Holmich had filed for bankruptcy and had disposed of the remaining 16 units (*see* Compl. ¶ 8).

5

FRCP 8(a)(2) for what the motion deemed improper "shotgun pleading," (2) for lack of personal jurisdiction over Mr. Stanton and Mr. Arger, and (3) for improper venue with respect to Mr. Stanton and Mr. Arger. In the alternative, the non-defaulting defendants also moved for a more definite statement and to transfer the entire action to the United States District Court for the Middle District of Florida. Shortly thereafter, plaintiff filed its own motion — noticed for the same hearing date — for partial summary judgment, arguing that the doctrine of *res judicata* barred any and all challenges by defendants to the validity of the patent-in-suit. According to plaintiff, because defendants failed to plead invalidity as either an affirmative defense or counterclaim in the prior litigation, which plaintiff contends involved the same patent, products, and parties (or privies) and for which judgment "on the merits" was entered, defendants are barred from raising it now.

Finally, while both motions were being briefed, the parties stipulated to the filing of a first amended complaint, which was approved in October 2010. A hearing on these motions was held on November 18, 2010.

**ANALYSIS**

Since many of defendants' arguments are rendered moot by this order's resolution of plaintiff's motion for partial summary judgment, plaintiff's motion will be addressed first.

**1.  RES JUDICATA AS TO PATENT INFRINGEMENT AND INVALIDITY CLAIMS**

Plaintiff's motion for partial summary judgment is based solely upon a *res judicata* argument. In short, since defendants allegedly failed to plead an affirmative defense or counterclaim of patent invalidity in the prior litigation (which both sides agree involved the same patent-in-suit and accused products), and since judgment on the merits was entered by Judge Zimmerman based upon a dismissal of the prior action with prejudice, plaintiff contends that defendants are barred by *res judicata* from challenging the validity of the '260 patent herein.[3] As explained below, however, while these arguments are both compelling and meritorious, plaintiff

---

[3] Plaintiff's request for this order to take judicial notice pursuant of FRE 201 of court filings in the prior litigation before Judge Zimmerman relevant to its motion for partial summary judgment is **GRANTED**.

6

fails to realize its implications:  the exact same arguments, decisions, and rationales advanced in its summary judgment motion *bar its own patent infringement claims as well*.

As a preliminary matter, this order notes that it is *claim* preclusion, not *issue* preclusion, that is being asserted (P's Br. 7).  While the term *res judicata* is often understood to encompass both flavors of preclusion, it is only *claim* preclusion that must be addressed herein.  Under the doctrine of claim preclusion, "a judgment on the merits in a prior suit bars a second suit involving the same parties or their privies based on the same cause of action." *Acumed LLC v. Stryker Corp.*, 525 F.3d 1319, 1323 (Fed. Cir. 2008) (citing *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 327 n.5 (1979)).  To the extent that an action turns on general principles of claim preclusion (as opposed to a rule of law having special application to patent cases), the law of the regional circuit in which the district court sits will apply.  *Media Tech. Licensing, LLC v. Upper Deck Co.*, 334 F.3d 1366, 1369 (Fed. Cir. 2003).

In the Ninth Circuit, claim preclusion applies where:  "(1) the same parties, or their privies, were involved in the prior litigation, (2) the prior litigation involved the same claim or cause of action as the later suit, and (3) the prior litigation was terminated by a final judgment on the merits." *Cent. Delta Water Agency v. United States*, 306 F.3d 938, 952 (9th Cir. 2002).  To ensure fairness to both sides, claim preclusion also bars the subsequent application of all defenses that could have been asserted in a previous action between the same parties on the same cause of action, even if such contentions were not raised.  *Clark v. Bear Stearns & Co.*, 966 F.2d 1318, 1320 (9th Cir. 1992).  Each of the elements of claim preclusion will be addressed in turn.

### A.  The Same Parties

There is no dispute that Goodman Ball — plaintiff in the instant lawsuit — was the plaintiff in the prior litigation.  Similarly undisputed that defendants Escape Velocity and Mach II were both named defendant in the first proceeding.  The only point of contention between the parties is whether the individual non-defaulting defendants, Mr. Stanton and Mr. Arger, are in privity with any of the defendants in the prior litigation.[4]

---

[4] Since no arguments are raised by either side as to whether claim preclusion applies to defendant Walter Holmich, who was not a party to the prior litigation, this order will not address him.

7

Claim preclusion may apply to parties in a second lawsuit who are the same as *or in privity with* the parties of the first lawsuit. *See United States v. Bhatia*, 545 F.3d 757, 759 (9th Cir. 2008). Even when the parties are not identical, privity may exist if "there is 'substantial identity' between parties, that is, when there is sufficient commonality of interest." *Tahoe Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency*, 322 F.3d 1064, 1081 (9th Cir. 2003) (citing *In re Gottheiner*, 703 F.2d 1136, 1140 (9th Cir. 1983)).[5]

Turning first to Mr. Stanton, it is undisputed that he is the *sole* shareholder and director of Escape Velocity (Ahmadshahi Decl. Exh. F, Stanton Decl. ¶ 2). Indeed, he admitted as much in the prior litigation. It is also undisputed (since it came from his own deposition testimony) that Mr. Stanton uses Escape Velocity solely "as an investment company, to make investments" (*id.* at Exh. I, Stanton Dep. 26–27). Indeed, when his business partner and friend, defendant Walter Holmich, was asked during his deposition whether it was Escape Velocity or Mr. Stanton who had invested $200,000 in the manufacture of the accused water purification units, Mr. Holmich stated: "Escape Velocity did, John Stanton. *Same thing*" (*id.* at Exh. A, Holmich Dep. 41) (emphasis added). Finally, Mr. Stanton freely admits that he "participated in the discussions relating to the mediation" in the prior litigation, despite appointing Mr. Arger to appear on behalf of Escape Velocity at the mediation (Stanton Decl. ¶ 6). There is no evidence that anyone other than Mr. Stanton controls the affairs of Escape Velocity.

As the Ninth Circuit has explained, "[w]hen a person owns most or all of the shares in a corporation and controls the affairs of the corporation, it is presumed that in any litigation involving that corporation the individual has sufficient commonality of interest" for *res judicata* to attach to the individual. *See In re Gottheiner*, 703 F.2d at 1140 (citation omitted). Indeed, "as a bar to repetitious litigation," public policy "would support a finding of privity between a close corporation and its sole or controlling stockholder." *Ibid.*

In their opposition brief to plaintiff's motion for partial summary judgment, defendants provide no evidence showing that Mr. Stanton shared ownership of Escape Velocity or ceded

---

[5] The question of whether parties are sufficiently in privity under *res judicata* is not one peculiar to patent law. The law of the regional circuit therefore applies. *See Transclean Corp. v. Jiffy Lube Intern., Inc.*, 474 F.3d 1298, 1304 (Fed. Cir. 2007).

8

control of the company to any other individuals. Rather, defendants merely argue, without providing any analysis, that "there is no evidence in the record that Mr. Stanton controlled the prior suit or that he was deeply involved or fully informed about it" (D's Opp. 10). This order agrees with plaintiff that this is insufficient to create a genuine issue of material fact on the question of privity. As in *In re Gottheiner*, where the Ninth Circuit found that privity existed between a sole shareholder and his company, it is undisputed — based upon his own declarations and deposition testimony — that Mr. Stanton owned all the outstanding shares of Escape Velocity stock and exercised control over its day to day affairs. *See ibid.* (reaching the same conclusion on analogous facts). Defendants have put forth no competent evidence to allow a reasonable jury to reach a contrary conclusion. In short, this order agrees with plaintiff that Mr. Stanton is in privity with Escape Velocity for the purposes of claim preclusion.

With respect to Mr. Arger, this order need not engage in the question of privity. As will soon be explained, plaintiff's patent infringement claim against Mr. Arger will be dismissed on venue grounds. Accordingly, this order does not need to reach whether claim preclusion binds him in this litigation.

### B. The Same Claims and Defenses

While plaintiff's summary judgment motion focuses entirely upon defendants' right to raise invalidity challenges to the patent-in-suit, it completely ignores the broader implications of its argument. A challenge to the validity of a patent, whether raised in a declaratory judgment action or as an affirmative defense or counterclaim, is simply a defense (or an anticipatory defense) to a claim of patent infringement. As such, the "claim" for claim preclusion purposes is really the patent owner's charge (or anticipated charge) of patent infringement. *See Foster v. Hallco Mfg. Co., Inc.*, 947 F.2d 469, 479 (Fed. Cir. 1991) ("Foster I").

Whether two claims for patent infringement are "the same" is a claim preclusion issue that is "particular to patent law." It is therefore analyzed under Federal Circuit law. *See Hallco Mfg. Co., Inc. v. Foster*, 256 F.3d 1290, 1294 (Fed. Cir. 2001) ("Foster II"). As recently explained by the Federal Circuit, "a claim is defined by the transactional facts from which it arises." *See Acumed*, 525 F.3d at 1324. On this point, the *Acumed* decision provided the following guidance:

9

> (1) When a valid and final judgment rendered in an action extinguishes the plaintiff's claim pursuant to the rules of merger or bar . . . , the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.
>
> (2) What factual grouping constitutes a "transaction", and what groupings constitute a "series", are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.

*Ibid.* (citing the Restatement (Second) of Judgments § 24).

In this connection, the Federal Circuit has repeatedly held that "one of the essential transactional facts giving rise to a patent infringement claim is 'the structure of the device or devices in issue.'" *Foster I*, 947 F.2d at 479. This is because "[a]djudication of infringement is a determination that a thing is made, used or sold without authority under the claim(s) of a valid enforceable patent" and "the status of an infringer is derived from the status imposed on the thing that is embraced by the asserted patent claims, the thing adjudged to be infringing." *Young Engineers, Inc. v. United States International Trade Commission*, 721 F.2d 1305, 1316 (Fed. Cir. 1983). In other words, a patent infringement claim — at least for claim preclusion purposes — is defined in large part by the allegedly infringing device.[6]

A corollary rule applies to the assertion of an invalidity defense (or counterclaim) in a subsequent litigation. The Federal Circuit has explained that even if the parties and patents-in-suit are "the same" for the purposes of claim preclusion, "a determination of patent infringement in an infringement suit, or even an explicit determination of patent validity, does not preclude the assertion of an invalidity defense in a second action *involving different products*." *Nasalok Coating Corp. v. Nylok Corp.*, 522 F.3d 1320, 1326 (Fed. Cir. 2008) (emphasis added). If, however, the accused infringing products in the second action are "essentially the same or only colorably different" from the first action, an invalidity claim in the second action "would be

---

[6] This rule also applies to contempt proceedings. It is well-established that contempt proceedings "are available only with respect to devices previously admitted or adjudged to infringe" a patent. *See KSM Fastening Sys., Inc. v. H.A. Jones Co.*, 776 F.2d 1522, 1526 (Fed. Cir. 1985).

10

1  precluded." *Id.* at 1327 (citation omitted).  According to the Federal Circuit, this device-specific
2  rule furthers an important policy:  it forces litigants to challenge the validity of a patent at their
3  earliest opportunity, since "the public is best served by getting invalid patents declared invalid as
4  early as possible."  *Foster II*, 256 F.3d at 1297; *see also Foster I*, 947 F.2d at 476–77.

5       In sum, even if the parties and patent in a subsequent action are identical to a prior action,
6  claim preclusion "does not apply unless the accused device in the action before the court is
7  'essentially the same' as the accused device in a prior action between the parties that was resolved
8  by a judgment on the merits."  *Acumed*, 525 F.3d at 1324.  This rule applies *equally* to
9  infringement claims and invalidity challenges.  *See Nasolak*, 522 F.3d at 1327 (explaining that
10 "the plaintiff and defendant should be treated equally as to res judicata" in such situations).  In
11 other words, "[i]f the plaintiff would not be barred from bringing a second infringement suit, the
12 defendant also should not be precluded from challenging patent validity in the second suit." *Ibid.*
13 Similarly, if a defendant is barred by claim preclusion from challenging the validity of a particular
14 patent, the plaintiff should *also* be barred from bringing infringement claims.  Such a rule is
15 exactly what the Federal Circuit described in *Foster II*, which involved a patent owner named
16 Raymond Foster and an allegedly infringing device sold by Hallco Manufacturing Company
17 called the "Hallco I":

> In the present case, the infringement action against the Hallco I device was terminated by a dismissal with prejudice, which is a judgment on the merits. [citations omitted.] *Accordingly, under basic claim preclusion rules, Foster is precluded from bringing another suit for infringement regarding the Hallco I.* As a corollary principle, Hallco now is similarly precluded from challenging validity in a suit for infringement of any device that is the same as the Hallco I, because invalidity was a defense that was or could have been raised in the prior litigation.

23 256 F.3d at 1297 (emphasis added).

24      As plaintiff argues in its summary judgment motion, it is undisputed that the patent-in-suit
25 and the accused water purification units are *identical* to those in the prior litigation.  In fact, the
26 existence and location of the exact units targeted in the instant litigation were *known* to the parties
27 in the prior litigation.  These units are *expressly* encapsulated in a "consent to sell" provision in
28 the settlement agreement (Compl. Att. 1; Ahmadshahi Decl. Exh. E at ¶ 4).  Given this backdrop,

11

1  this order finds that the transactional facts underlying the claims in both lawsuits render
2  defendants' invalidity challenges *and plaintiff's patent infringement claims* barred under the
3  claim preclusion rules discussed herein. Comparing the prior and instant lawsuits, the patent-in-
4  suit is the same, the accused products are the same, and the alleged "sales" were made pursuant to
5  the exact same government contracts and to the exact same United States Navy customers. These
6  facts are clearly "related in time, space, origin, or motivation." Accordingly, this order finds that
7  the patent infringement claims (and invalidity defenses thereto) in the instant action arose from
8  the same transaction, or series of connected transactions, from which the prior patent action arose.
9  In other words, the patent claims and defenses raised herein are undoubtedly "the same."

### C. Final Judgment on the Merits

In the prior litigation, Judge Zimmerman entered a dismissal with prejudice of the entire action pursuant to the parties' settlement agreement, subject only to the condition that the action could be reopened *within 60 days* if the settlement fell through (*see* Dkt. No. 83, CV 07-01148 BZ). While Judge Zimmerman temporarily reopened the action *nine months* after it had been dismissed to determine whether the court could exercise jurisdiction to enforce the settlement, he concluded that the case should *not* have been reopened and that the court lacked jurisdiction to enforce the settlement. Given this determination, Judge Zimmerman vacated his prior order reopening the action and entered judgment accordingly.

As stated by the Federal Circuit in *Foster II*, the dismissal of a patent infringement (or declaratory judgment of patent invalidity) action *with prejudice* pursuant to a settlement agreement constitutes a final judgment on the merits for claim preclusion purposes. 256 F.3d at 1297; *see also Lawlor v. Nat'l Screen Serv. Corp.*, 349 U.S. 322, 327 (1955). As plaintiff has persuasively argued in its motion, since the prior litigation was dismissed with prejudice, a "final judgment on the merits" — at least for claim preclusion purposes — was entered.

\*       \*       \*

Since the undisputed record demonstrates that the same parties (or their privies) were involved in the prior litigation, the prior litigation involved the same patent infringement "claim" as asserted in the instant litigation, and the prior litigation was terminated by a final judgment on

12

the merits, neither Escape Velocity nor Mr. Stanton may raise any invalidity challenges to the patent-in-suit. Plaintiff's motion for partial summary judgment is therefore **GRANTED**. Under the same claim preclusion principles, however, and based upon the same Federal Circuit decisions relied upon by plaintiff in its summary judgment motion, this order finds that plaintiff is also barred from asserting its patent infringement claims herein.

For these reasons, plaintiff's claims of direct and induced infringement of the '260 patent against Escape Velocity, Mr. Stanton (who is in privity with Escape Velocity), and Mach II are **DISMISSED**.[7]

### 2. IMPROPER VENUE AS TO DEFENDANT PETER ARGER

Turning next to plaintiff's patent infringement claims against Mr. Arger (the only non-defaulting individual defendant remaining in this action), defendants contend that venue is improper because Mr. Argue neither "resides" nor maintains "a regular and established place of business" in this district.

As set forth in 28 U.S.C. 1400(b), "[a]ny civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." As stated in his declaration, Mr. Stanton lives in Florida, owns no property or residences in California, does not maintain an office in California, does not advertise in California, and does not have any employees in California. He has never maintained or conducted any business in this state, regularly or even sporadically (Arger Decl. ¶¶ 1, 7–10). For these clear-cut reasons, defendants argue that venue with respect to Mr. Arger is improper in this district under Section 1400(b).

This order agrees. Based upon the undisputed evidence, it is clear that Mr. Arger neither resides in nor maintains "a regular and established place of business" in the Northern District of California to satisfy the venue requirements of Section 1400(b). Plaintiff's sole argument to the contrary is unpersuasive. It is true, as plaintiff points out, that "venue for personal liability of a corporate officer/owner for acts of infringement by the corporation, whether or not the facts

---

[7] This order does not address whether claim preclusion also extends to Mr. Holmich, who is the owner of Mach II. This issue must be addressed by plaintiff when, if ever, it moves for default judgment against the defaulting defendants.

1  support piercing the corporate veil, may reasonably be based on the venue provisions for the
2  corporation." *See Hoover Group, Inc. v. Custom Metalcraft, Inc.*, 84 F.3d 1408, 1410 (9th Cir.
3  1996).[8] Even so, the Federal Circuit further cautioned that "venue as to corporate employees
4  charged with personal liability for acts taken as individuals, *not as the alter ego of the*
5  *corporation*, does not flow automatically to forums in which venue is proper as to the
6  corporation." *Ibid.* (emphasis added). In other words, proper venue over a corporation will only
7  be extended to acts taken as the corporation's "alter ego."

8  While the complaint alleged that Mr. Arger should be held personally liable for induced
9  infringement of the patent-in-suit as a "corporate officer[] of Escape Velocity," he was not
10 alleged to be the "alter ego" of any of the defendant corporations in the complaint or any of
11 plaintiff's motion papers. Indeed, it is undisputed that Mr. Arger has no ownership stake in and is
12 not an officer or director of either Escape Velocity or Mach II (*id.* at ¶ 3). Rather, plaintiff merely
13 argues that Mr. Arger acted as an "officer" of Escape Velocity and Mach II due to his role as a
14 "Special Projects Manager" and his involvement in the mediation efforts in the prior litigation.
15 These allegations fall far short of demonstrating an "alter ego" relationship as required under
16 *Hoover Group*.

17 In sum, since Mr. Arger has produced undisputed evidence that he does not own any
18 shares of any defendant corporation, that he does not control any defendant corporation, that he
19 maintains no residences in this district, and that he does not maintain a regular and established
20 place of business in this district, all patent infringement claims against Mr. Arger are **DISMISSED**
21 for improper venue.

22  **3.   MOTION TO TRANSFER**

23 Defendants also request a transfer of this action to the United States District Court for
24 the Middle District of Florida pursuant to 28 U.S.C. 1404(a). Section 1404(a) states that "[f]or

---

[8] Plaintiff raises this argument because corporate defendants are treated differently under the venue statutes from individuals. For *corporate* defendants, the meaning of "resides" in Section 1400(b) carries the same meaning as set forth in 28 U.S.C. 1391(c) — namely, a *corporate* defendant "resides" in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced. *See VE Holding Corp. v. Johnson Gas Appliance Co.*, 917 F.2d 1574, 1584 (Fed. Cir. 1990). Since venue is proper as to Escape Velocity (since it is subject to personal jurisdiction in this district), plaintiff attempts to argue that venue should also be proper as to Mr. Arger, a purported "officer" of Escape Velocity.

14

the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Since the standards applicable to a motion to transfer are a matter of procedural law, the law of the regional circuits apply to such requests. *See Storage Tech. Corp. v. Cisco Sys. Inc.,* 329 F.3d 823, 836 (Fed. Cir. 2000).

In determining whether to grant a motion to transfer pursuant to Section 1404(a), courts in the Ninth Circuit may consider: "(1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the difference in the costs of litigation between the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof." *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498–99 (9th Cir. 2000). That said, "unless the balance of factors is strongly in favor of the defendants, the plaintiff's choice of forum should rarely be disturbed." *Securities Investor Protection Corp. v. Vigman*, 764 F.2d 1309, 1317 (9th Cir. 1985).

This order finds, after weighing these various factors, that defendants have failed to show that a transfer of this action to the United States District Court for the Middle District of Florida is warranted. *First*, it is undisputed that the settlement agreement — the document that forms the basis of plaintiff's breach of contract allegations — was negotiated and executed in this district. *Second*, this order finds that the corporate defendants' contacts with California were purposeful and significant. Indeed, given the bizarre procedural history of this litigation, the corporate defendants likely knew (or at least should have known) that the alleged infringing water purification units sold to the United States Navy after the settlement agreement was reached would be shipped directly to California. *Third*, given that both Mr. Stanton and Mr. Arger have now been dismissed from this action, the alleged "inconveniences" of continuing this action has

15

been eliminated.[9]  *Fourth*, plaintiff Goodman Ball, the inventors of the patent-in-suit, and the alleged infringing water purification units are all located in California.

Weighing these considerations, this order finds that transferring this action to the Middle District of Florida would not provide a more convenient forum for the parties. Since the balance of these factors is not "strongly in favor of the defendants," this order declines to disturb plaintiff's choice of forum. *Securities Investor Protection Corp.*, 764 F.2d at 1317. Defendants' motion to transfer this action is therefore **DENIED**.

### 4. CHALLENGES TO PERSONAL JURISDICTION

Given that both Mr. Stanton and Mr. Arger have already been dismissed from this action, this order does not need to reach defendants' personal jurisdiction challenges. Defendants' personal jurisdiction challenges are therefore **DENIED AS MOOT**.

### 5. ALLEGED VIOLATIONS OF FRCP 8(a)(2)

Finally, turning to defendants' pleading challenges brought under FRCP 8(a)(2), while it is true that paragraph two of the *original* complaint attempted to improperly incorporate by reference the "entire record" of the prior litigation before Judge Zimmerman, the parties stipulated to the filing of a first amended complaint while the instant motions were pending. The *amended* complaint, which upon its filing superseded the original complaint, no longer attempts such a maneuver. Additionally, the amended complaint appends as exhibits the underlying settlement agreement and the patent-in-suit, thereby addressing all of defendants' pleading grievances in the instant motion (*see* D's Br. 8–10). For these reasons, defendants' challenges under to FRCP 8(a)(2) and their request for a more definite statement are **DENIED AS MOOT**.

## CONCLUSION

For the reasons set forth herein, defendants' motion to dismiss, for a more definite statement, and to transfer this action to the United States District Court for the Middle District of Florida is **GRANTED IN PART** and **DENIED IN PART**. Plaintiff's motion for partial summary judgment is **GRANTED**. As a result of the holdings herein, plaintiff's patent infringement claims

---

[9] Both Mr. Stanton and Mr. Arger submitted declarations stating that they would be inconvenienced if they were forced to litigate in this district as *individual* defendants. Similar arguments were not made with respect to the corporate defendants.

against Escape Velocity, Mach II, and Mr. Stanton are **DISMISSED**. Finally, due to improper venue, defendant Peter Arger is **DISMISSED**. This order takes no position on whether plaintiff's remaining contract claim, which is *alleged* to meet the diversity and amount in controversy requirements of 28 U.S.C. 1332, actually satisfies those requirements.

**IT IS SO ORDERED.**

Dated: November 19, 2010.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE